Good morning. May it please the court. My name is Michael Pott and I'm here representing the appellants Arnold Schwarzenegger, Mr. Doyle, and the boards of parole commissioners and deputy commissioners in this matter. Can you update us on what's happened this week? Because isn't there activity that was going on this week? I don't believe so. I thought that there was something to expand the class. There was a motion that was filed by plaintiffs in the district court that was removed by the plaintiffs from the district court a couple weeks ago. They took it off calendar. Okay. And then do we still have, I think the one person that was left, is he still in custody? Yes, he is. Mr. Fowler had a hearing that was continued to November, and I think it's November 8th, I believe. Okay. So we still have something to talk about. Yes. Mr. Fowler, as you acknowledge, Mr. Fowler is the only inmate that is still in custody that has this preliminary injunction specifically applied to him at this point in time. The district court stayed the preliminary injunction as to inmate Gilman because he does not have a hearing coming up until 2012 at the earliest. As you know, this case involves California Proposition 9, otherwise known as the Victims' Bill of Rights Act of 2008, Marcy's Law, which amended California Penal Code Section 3041.5 to increase the time between the Board of Parole's hearings denials of life-term prisoner suitability for parole and the subsequent hearings. Here, in this case, the district court erred when it granted plaintiff's motion for a preliminary injunction to prevent California from applying that amendment to the eight named plaintiffs. And in this case, as Justice Callahan indicated, we're down to just Mr. Fowler. The district court erred in looking at the ex post facto, in analyzing it based on the ex post facto analysis. When you look at the preliminary injunction, the district court looked at was the plaintiff likely to succeed on the merits, likely to suffer irreparable harm, the balance of equity is tipped in their favor, and the injunction is in the public interest. Here, with respect to the ex post facto argument, the district court found that there was a likelihood of success that plaintiffs would have on the merits, because there was a significant risk of increasing the measure of punishment in this matter. Counsel, it seems to me, and I hope both counsel will address this, what seems to me to be the crux of the problem. It seems to me that until this law has been in effect for a while, everything is purely speculative as to whether or not in any individual case, or in more cases in general, in fact, there would be a longer time between hearings for anyone who might otherwise receive parole, because of this kind of safety valve of the expedited hearing opportunity. And if I'm right about that lack of sort of present evidentiary basis, do we even have to get from your perspective to the other factors? From my perspective, no, you don't have to get to the other factors. And you're exactly right. This is a case where it's speculative as to what ultimately is going to happen for any inmate. And the standard is that they need to be able to show with some assurance that the inmate would have received a less severe punishment. Under the circumstances, it's speculative from year to year as to whether an inmate is going to receive parole or not. Well, they still have to have an, I mean, assuming even though that a person who might otherwise get parole is entitled to a hearing and isn't foreclosed from consideration, someone who's a model prisoner who would otherwise get out. But I guess how this expedited opportunity, which can be either sua sponte or requested, will actually work in practice is unknown. And I guess that's where I fall off the train or the track from what the district court was saying. Yeah, there is at this point in time nothing in the record that explains or shows how advanced hearings have been applied under the circumstances. So it is difficult for the court at this point in time to look at it and see. Nevertheless, the opportunity for advanced hearings ameliorates any impact that might exist with respect to the inability to have hearing every year. The plaintiff, the inmate, can request an advanced hearing at any point in time. The board itself can decide to advance a hearing at any point. Well, say like if later if it came out that everyone that requested an expedited hearing never got it. And so the worst case scenario seemed to be what was happening all of the time. Would that present a scenario where maybe the plaintiffs would have a likelihood of success? I don't think so because under the circumstances they would not be able to show factors that would justify advancing that hearing. The statute indicates that you can advance a hearing. I'm just saying if they could compare, you know, we have, there's some figures in the record about how long people are being deferred on, you know, of the, I mean they have some sort of matrix figures to compare to. And then that they completely just turn upside down under this new, you know, proposition. Well, to me there's a couple of problems with the statistics that are cited. Number one is it's indicating individuals who get parole, period. So anybody who came up for parole, whether they were a murderer or whether they were covered by this particular statute or not, those statistics encompass that, at least that's what it indicates in the brief. And I think if you look at the brief, actually there's a footnote in the brief that was filed at the district court level that included those statistics. You know, you're sort of fighting Judge Callahan's question and her hypothetical. The point, I think, of the question is if in two years or three years or four years a plaintiff can come in and prove that in fact there's a strong likelihood that an identically situated person has to wait longer for parole,  based on whatever evidence. Are you afraid we're going to remember two years from now? Pardon, excuse me? Are you afraid we're going to remember two years from now what you said today? No, no. Based on whatever evidence comes up at that point in time, the evidence I believe would show whether there was a reason for denying those advanced hearings at that point in time. If there was a reason for denying an advanced hearing, then according to the board, that individual would not have been suitable for parole review at that point in time. So regardless of whether they might have received a hearing under the old statute, they had the opportunity to request an advanced hearing. The board of parole hearings is looking at it to see if there's changed circumstances that would justify a release at that point in time or a possible release through a hearing process. And if the documentation shows that the board decided a hearing wasn't appropriate at that point in time because there wasn't changed circumstances. If the documents show that they just don't like the rapid hearings and they're never going to give one, what would that do to your potential liability at some point down the road? It's hard to speculate on that. But you're relying on that expedited process as part of your safety valve here, are you not? Sure. Absolutely. What about Morales and Garner? Is this case distinguishable for Morales and Garner because it limits the parole board's discretion to set shorter deferral periods rather than expanding the board's discretion to set longer deferral periods? No, I believe that this case is not distinguishable based on that ground. While it's true that under the new statute, under Marcy's law, the board can't set a one-year date, a parole hearing every one year, the cases are not distinguishable. Morales and Garner were very specific in dealing with the fact that if you had an opportunity to advance a hearing, then that would help ameliorate any risk that was involved in having a hearing set at a later date. So, for example, in the Garner case. Well, except for, if I'm understanding this correctly here, the maximum period automatically applies unless the board finds, by clear and convincing evidence, that the maximum is not necessary. Whereas in Morales and Garner, the minimum deferral periods, which were the same as the old rules deferral periods, was automatically applied unless the board found that it was not reasonable to expect that parole would be granted in that time. So, you know, ergo therefore, thus in Morales and Garner, prisoners received the old rules deferral periods unless the board decided otherwise, right? Agreed. Yeah. So, based on... I'm winding that. I had to do it. I couldn't take a chance of just saying it without looking at my notes. No, I understand. I know, and you're right. Those cases did involve the lower period as being a possibility. In this case, the 15 years is the standard, and then from there, there is an opportunity to go down to 10, 7, 5. But that's based on the information that's available to the commissioners at the hearings. And so when they review the information at a parole hearing, they get an opportunity to determine whether this person has sufficient information in their file and from their interactions with that individual whether parole is appropriate. That doesn't change under this old statute or the new statute. If that individual inmate is ready for parole at this point in time, they'll receive it. Otherwise, there's a deferral period that's going to be implemented. Now, when you look at Garner and Morales, with Morales, Morales Court specifically acknowledged that for a limiting class of parolees in that case, or a limiting class of inmates, that it was appropriate to continue the number of years that a person may end up having to have a deferral period for. Same thing with Garner, from 3 years to 8 years. And though the bottom number didn't change, the fact that they've continued in this under the Marcy's Law, they've indicated that the level is now 15 years and you're working your way down, is in my mind no different than Garner and Morales. Because you still have the opportunity for the decrease, the lower periods of parole hearing set time frames, whether it's the 3, 5, 7, 10, or 15. Well, now my understanding, just sort of go back to what you said before, I think the district court found that the board's practice prior to Prop 9 of deferring approximately two-thirds of the prisoners for 1 or 2 years implied that the board reasonably expected that many prisoners would become suitable and released in 1 or 2 years. And did I understand your prior statement to be that you don't think that's a proper inference? That was what I was referring to earlier with the statistics, yes. There's a couple of problems with that. Number one is what are those statistics? Are they representative of all parolees or are they representative of just the individual parolees who would be subject to Marcy's Law? And there's no indication of that, I don't believe, in the record. Number two is the Marcy's Law encompasses all inmates who are in there for a life term. And the prior statute had a limit for non-murderers of 2 years. So back under the prior law, the max that could be given to an inmate who was a non-murderer was 2 years, a continuance. So the fact that the statistics might show that 40% of inmates received a 2-year deferral, that could be only because of the fact that that was all the board could give at that point in time. And that's not a problem in the general sense in that Garner and Morales allow for an extended period with respect to those individuals who don't have a likelihood of achieving parole at any point in the near future. Let me explore one more thing with you. Since there is a motion, I mean, this is an ongoing litigation. I think this is my second time on this because I was on the class, the initial class certification. But if whatever the court decides, and I don't know what we're going to decide because we haven't actually talked about it and we haven't heard from the other side. But whatever we decide is obviously going to be the law of the case in that sense. But is there a need for anything precedential out of it here? Or if the class is expanded, is that going to be so different because there's going to be different people? What should we be thinking? You know, to be helpful in the litigation to the district court in terms of what, you know, if we think that the district court got it right or wrong. Is that going to have any impact on the expanded class or is that just going to be another inquiry? I don't know. I think it depends on what the ruling is. Whether you win or lose? Yeah, for me. No, but it depends on, you know, I mean, there's four different grounds that this could come down on. It could be the likelihood of success and the merits. It could be irreparable harm. I think those factors like irreparable harm, for example, differs between Mr. Fowler and the class, for example. And in addition to that, there would be a whole different panoply of evidence that would have to be introduced potentially at the lower court level to determine whether these inmates are going to suffer irreparable harm or not. In fact, with respect to this case, there really is no evidence Mr. Fowler is going to suffer irreparable harm. So I think it in part depends on what the opinion says. If the opinion hits head on the issue of likelihood of success and the merits, then I still think that that will probably be ultimately guidance toward the end result, which would be a trial to determine whether there actually is an ex post facto violation. Thank you, Counselor. You've exceeded your time. We appreciate your comments and we'll hear from Ms. Knox. Thank you. Monica Knox for the prisoners. Good morning. I'd like to make a few factual comments on some of the issues that came up. First of all, there are two named plaintiffs who remain in custody, Mr. Gilman and Mr. Fowler. The district court did stay the preliminary injunction pending appeal as to Mr. Gilman, but as soon as the appeal is over, if the preliminary injunction stands, then it would apply to Mr. Gilman also. But I'm not sure that that's actually legally relevant in any way, because the defendant's claim and the argument seems to kind of assume that those are the own – that the evidences to Mr. Fowler is the only thing that's relevant in assessing whether the district court abused its discretion. Well, no. Looking at all the evidence in any potential plaintiff, I still have the concern, speaking only for myself, that there is of necessity only speculation as to whether there's a significant risk of prolonging the term of imprisonment of any particular inmate, because there is this kind of safety valve within the new law that someone can request an expedited hearing and that the board sua sponte can grant one. And until there are facts as to how that actually works, how can we do other than guess that anybody might be imprisoned longer? Well, first of all, I would say you're not guessing at all because we've actually proven it is to Mr. Masoner, who was a named plaintiff and is now out of custody. But the evidence as to him remains relevant, and we proved it is to him. But more important, how can you prove it? Because Mr. Masoner got a three-year deferral at his hearing in 2008. He went to hearing the day after the board implemented the provisions of Prop 9, and he got a three-year deferral. He ended up going to hearing 11 months later, and it was a hearing that was not regularly scheduled by the board because he got a three-year deferral, but he went to hearing because the court ordered that he have a new hearing. Mr. Masoner had won several times in both Federal and State court. And at that hearing, he was, in fact, found suitable. So what is — so how do we generalize from that? Maybe the board learned its lesson, and in another case, in the future, they'll use this opportunity for expedited hearing. It's only a guess that they won't. Well, about the expedited hearings, first of all, I — under the law of ex post facto, they are absolutely irrelevant. It may be a safety valve, but what both this Court in Himes and Nulse and the Supreme Court in Weaver and Miller have quite clearly said is that the inquiry looks to the challenge provision and not to any circumstances that may mitigate its effects. But the challenged provision provides for this. You can't excise it and pretend that there is no opportunity for expedited hearings within the law. I'm not — I'm not trying to. But I would — let's take Weaver as an example. Weaver was a change in the credit scheme, and it took away credit that prisoners could previously gain. But it also had a safety valve in there in that the prisoner could apply to win his credit back. And what the Supreme Court said is we don't care. That's not how you assess an ex post facto violation. It's not how you assess significant risk of longer terms. There may be a safety valve, and in any particular case, somebody may win their credit back. But that's not relevant to the ex post facto analysis. This Court did the same thing in Himes and Nulse. That advanced hearing is not relevant to the ex post facto analysis. Moreover, if it — even if it were, you need to look at what this so-called safety valve is. First of all, the safety valve on its face, the provision of the law, says that the only time the board may grant an advanced hearing is if there are a change in circumstances or new information. That will not necessarily be true. Once again, we proved that in Mr. Masoner's case, and subsequent events proved it in all the other prisoners who got out, too. There was no change in circumstances in Mr. Masoner's case.  And in fact, in 2008, when he was denied, and this is all evidence that was before the district court, in 2008, when Mr. Masoner was denied, the panel that denied him specifically said, we understand that all it takes is a different commissioner to see it differently, and we don't doubt that different commissioners would see your case differently, but we're going to deny you. And it imposed a three-year deferral. Well, what that meant is that absent getting a he wasn't going to get an expedited hearing, because on the face he could not meet that standard. It requires change in circumstances or new evidence. And yet, not only did the board that gave him that three-year deferral recognize that all it took was a different panel. In fact, when he got a different panel, that's in fact what happened, with no change in circumstances. So first of all, there is the requirement, which wouldn't have to take place in order for somebody to be found suitable at his next hearing. Well, but is that, but that's like two different panels on the Ninth Circuit. I've been on here long enough. You might get a different result. But does that mean that, you know, we're an invalid body? It's not, it's not about whether one, it's not about whether that made the 08 panel wrong or their decision illegal. It's about, we're talking about what it's going to take for the prisoner to get out of custody, to be found suitable and be granted parole, right? And all it takes some time. I would argue it should be changed circumstance and not just a change of panel. But if you get lucky with a change of panel, you know, we don't give things back. Well, it's, it's, Mr. Masoner had been found suitable by other panels before us, had virtually all of the named plaintiffs, had had multiple grants. Let me ask you another question. The district court based part of its decision on the fact that plaintiffs are likely to succeed in showing a significant chance that some prisoners who are not presently suitable for parole will become suitable in fewer than the maximum deferral period of 15 years. Was this finding relevant if none of the eight plaintiffs to whom the injunction applies would have been subject to the maximum 15-year deferral under the new rules? If none of the named plaintiffs would have been subject to the 15-year maximum? Right. So we made that finding and it was based on the 15-year deferral. But were any of these plaintiffs subject to the 15-year deferral? Everybody who goes to hearing is subject to the 15-year deferral. The 15-year deferral is the default. If they were all in, would that finding be relevant? Do we have to tie that finding to the fact of those people that were eligible for the 15-year deferral? No. Actually, not only is the ex post facto analysis not limited to Mr. Fowler, because he's the only one that the preliminary injunction applies to, it's not limited to the named plaintiffs. When the issue is raised about an ex post facto, the court can, there are alternative ways of proving it. One is as to the particular defendant before, the prisoner before the court. But the other is, is it likely to have a significant impact on prisoners in general? Now, that reminds me that I'd like to say something about the statistical information before the court. What was before the court is that 38 percent of prisoners who went before the board got one, before Prop 9, got one-year deferrals, and another 31 percent or something got two-year deferrals. Together, it was more than two-thirds of all people. Now, the defendants have said, well, we don't know that that applies to only people who would be in the class who go to hearings. But of course it applies only to those people, because the stat comes from the people who go to hearings. It doesn't come from all people who have life terms but haven't yet reached their eligibility date. So what the statistical information showed is that two-thirds got one or two-year deferrals, which are no longer available under any scenario. Of that, the defendants have also said, well, we don't know how many of them are – were only subject to two-year limit before. And it is true that there is a small percentage of the people who are doing – and this was also before the court – of the people who are doing life terms that are there for some offense other than murder. And in the pre-Prop 9 law, they were subject to either a one-year or two-year deferral, a one-year default, but it could go up to two years. There are 25,000 prisoners in the State of California who are doing terms of life with the possibility of parole. Of those, 2,600, 10 percent, are people doing it for something other than murder. So there is a small percentage of these people who were only subject under the old law to two years, but the vast majority of them were subject up until five years and got one – and two-thirds of them every year got one- or two-year deferrals, which are no longer possible. And so even if we're not – the maximum presents its own problem, but the biggest issue in what Prop 9 did and what sets it apart from what has been held in Morales and Garner is that it took away what two-thirds of the prisoners were getting. And you have to remember, when the – when with 90 percent of these prisoners, the board had the discretion to go up to five years, and yet in two-thirds cases it found it reasonable to believe that the prisoner would be found suitable in one or two years. And so now – and the board can't do that now. No matter how much they think he's going to be suitable in a year, they cannot impose that. Now, that takes us back again to the expedited hearings, so that we have to – the prisoner first has to be able to show a change in circumstances or new evidence. And I've already discussed how the evidence shows that is not necessary. Sometimes all you need is another hearing. Even if the prisoner has made that standard, it is absolute discretion with the board whether he gets an advanced hearing or not. It's absolute discretion. And the board doesn't have to give a reason. All it has to say is no. And it's true. We are going to move to expand it to the class, and because it's now 19 months of practice, and we do have statistical information that shows what is happening and it totally supports our case, but that's not before this Court and I understand  But the thing is, just looking at what was required in order to get it, is that it was absolute discretion on the part of the board, that they could say no without any reason at all. There were additional hurdles. There are in the statute additional hurdles that the prisoner has to get over. There's an application process that is less than clear. There are the victim's law enforcement VA's point of view that has to be solicited. There is the timing of all of this, because there is virtually no way, as the district court found, that somebody could get to hearing in a year through, even if it all goes favorably and well for him, even if he gets an advanced hearing. He can't even begin to apply for an advanced hearing until four months passes, because the decision isn't final. The board is not going to entertain an alteration to the decision when the decision isn't even final. And once he does apply, they are required by law under Prop 9 to solicit the victim and the law enforcement's point of view on all of it. Kagan. Well, that taken alone is not an ex post facto violation, is it, apart from the timing to get additional information or viewpoints? I'm not saying that the timing is. What I'm saying is that when we look at whether it's a significant risk of prolonging his term, if in fact there's a significant chance that at his next hearing he's going to be found suitable, but there's no way for him to get to a hearing in the time he would have gotten to a hearing under the old law, then it has, in fact, increased his term. And it doesn't matter what the reason is that there isn't any way to get to it. I'm not saying that soliciting the views of people or having to wait until your decision was final is in any way unlawful. I'm just saying they're all prerequisites to getting an advanced hearing, and it then therefore does, it therefore makes the possibility of getting an advanced hearing it makes it likely to increase his term, which is what the inquiry is. The other thing about advanced hearings is that in Morales and Garner, although they did discuss advance, the possibility of advancing a hearing as a possible way, as one of the things that ameliorated the change, that what, in those cases, what they, the Supreme Court stressed in both those cases is that the parole board got to set it where they thought it was correct to start with. And what the advanced hearing did is in the unusual case in which the parole board got it wrong, then there was a possibility to fix it. This isn't about the parole board getting it wrong. This isn't about fixing something they got wrong. It's about they have to do something. In the Supreme Court, if as faculty members think of that as expected, counsel, your time has expired. Thank you very much. Your time expired as well. We appreciate the arguments of both counsel which have been very helpful in this  Is that your understanding? Yes.
judges: Graber, Callahan, Bea